Robert L. Levy (RL-1633)
BANTLE & LEVY LLP
817 Broadway
New York, New York 10003
212.228.9666
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                         :

CHRISTINE VINCENT,               :     06  CV 4277 (LAP)
                         :
          Plaintiff,        :
                         :     <u>COMPLAINT</u>
     -against-          :
                         :
EMI MUSIC, N.A. and DALE HECKER,   :     PLAINTIFF DEMANDS
                         :     TRIAL BY JURY
          Defendants.     :
                         :
-------------------------------------------------------------x

Plaintiff Christine Vincent, by her attorneys, Bantle & Levy LLP, alleges for her complaint against defendants as follows:

## NATURE OF THE ACTION

1.     This is an action for employment discrimination based on sex, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e <u>et</u> <u>seq.</u> ("Title VII"), the New York State Human Rights Law, New York Executive Law §290 <u>et</u> <u>seq.</u>, (the "Executive Law"), and the New York City Administrative Code §8-101 <u>et</u> <u>seq.</u>, (the "Administrative Code"). Plaintiff seeks declaratory and injunctive relief and damages.

**JURISDICTION AND VENUE**

2.     The jurisdiction of this Court is invoked pursuant to 42 U.S.C. §2000e et seq., as amended, and 28 U.S.C. §§ 1331 and 1332.  In addition, plaintiff asserts state and city anti-discrimination law claims under this Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

3.     A substantial part of the unlawful acts and discriminatory practices alleged herein were committed within the district of the United States District Court, Southern District of New York, and venue is properly lodged in this Court pursuant to 28 U.S.C. §1391(b).

4.     All conditions precedent to jurisdiction under §706 of Title VII, 42 U.S.C. §2000e-5(f)(3), have occurred or been complied with:

a.     A charge of employment discrimination on the basis of sex was filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the adverse actions of which plaintiff complains in this action.

b.     A notification of right to sue was issued by the EEOC on or about March 20, 2006.

c.     This complaint has been filed within 90 days of receipt of the EEOC's notification of right to sue.

5.     Plaintiff has mailed a copy of this complaint to the Corporation Counsel for the City of New York and with the New York City Commission on Human Rights as required under New York City Administrative Code, §8-502.

**PARTIES**

6.     Plaintiff Christine Vincent ("Vincent"), is a thirty-nine year old female

citizen of the United States and is a resident of New York, New York.

7.      Vincent was employed by defendant EMI, N.A. ("EMI" or the "Company") from in or about September 1998 through the date of her unlawful termination on June 6, 2005.

8.      Upon information and belief, defendant EMI is a division of EMI Music, Inc., a Delaware corporation with its principal place of business at 150 Fifth Avenue, New York, New York.

9.      EMI is an integrated recorded music company, with numerous record labels within the United States.

10.     At all times relevant herein, EMI has maintained offices in New York City, New York.

11.     At all times relevant herein, EMI is a person within the meaning of §701(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(a).  EMI also is a person within the meaning of New York Executive Law § 292(1) and New York City Administrative Code § 8-102(1).

12.     At all times relevant herein, EMI has been an employer engaged in industry affecting commerce within the meaning of §701(h) of the Civil Rights Act of 1964, 42 U.S.C. §2000e-(h).

13.     At all times relevant herein, EMI is an employer that has employed more than 50 employees.

14.     Dale Hecker ("Hecker") is a male citizen of the United States and, upon information and belief, a resident of the State of New York.

15.     At all relevant times herein, Hecker was an agent of EMI and a management employee within the meaning of 42 U.S.C. § 2000e(f).

16.     As a management employee of EMI, Hecker had authority to act on behalf of EMI in the hiring and firing of employees such as plaintiff.

## STATEMENT OF FACTS

### Pattern and Practice of Gender Discrimination

17.     On information and belief, at all relevant times herein, EMI has engaged in a pattern and practice of discrimination based on gender within its North America Information Technology Service Delivery Division (the "IT Division"), including without limitation, within the North America Applications Development Group (the "Applications Group") in which plaintiff was employed.

18.     On information and belief, as part of this pattern and practice of discrimination, female employees have been treated less favorably than male employees within the IT Division and/or Applications Group.

19.     On information and belief, as a result of this pattern and practice of discrimination, at all times relevant herein senior management within the IT Division is disproportionally male, as is senior management within the Applications Group.

20.     On information and belief, as part of this pattern and practice of discrimination, female employees in the IT Division and/or Applications Group are not seriously considered for senior management and management positions and/or are denied promotions to these positions, which are given, or would be given, to similarly situated male employees.

21.     On information and belief, as a result of this pattern and practice of

4

discrimination, in or about June 2005 only six of twenty-six managers within the IT Division were women.

22.     On information and belief, as part of this pattern and practice of discrimination, male candidates for employment routinely are hired to work in senior management or management positions within the IT Division and/or Applications Group while comparably qualified female candidates generally are not hired.

23.     On information and belief, as part of the pattern and practice of discrimination, certain workplace rules are enforced against female employees in the IT Division and/or Applications Group, but not against similarly situated male employees.

24.     On information and belief, as part of the pattern and practice of discrimination, female employees in the IT Division and/or Applications Group are subjected to selective reprimand and disciplinary action for alleged violations of workplace rules, while similarly situated male employees are not routinely subjected to such a practice.

25.     On information and belief, as part of the pattern and practice of discrimination, EMI maintained a culture of male privilege within the management of the IT Division and/or Applications Group in which female employees were treated as second class citizens and provided with limited opportunities for advancement within the ranks of management as compared to their similarly situated male counterparts.

26.     On information and belief, EMI, through its agents and employees, had actual notice of a pattern and practice of discrimination against female employees within the IT Division.

27.     On information and belief, defendant, through its agents and employees, at

all times relevant herein knew or should have known of the pattern and practice of discrimination against female employees within the IT Division but failed to take steps to prevent the discrimination and create equal opportunity for its female employees.

28.     As part of the pattern and practice of discrimination, plaintiff, Christine Vincent, has been treated differently and less favorably than male employees, including without limitation, being denied promotional opportunities and being more harshly disciplined than similarly situated male employees.

<u>**Discriminatory Practices Directed Against Christine Vincent**</u>

29.     Plaintiff commenced employment with EMI in September, 1998 as a member of the Applications Group.

30.     As a member of the Applications Group, plaintiff's responsibilities included, <u>inter alia</u>, working as a liaison between business systems users and programmer analysts regarding internally developed software applications and creating and executing test plans for the modification and enhancement of business systems.

31.     Throughout her employment at EMI, plaintiff routinely received positive feedback on her performance from colleagues within and without the Applications Group, including consistently favorable written performance evaluations.

32.     Among plaintiff's many contributions at EMI, she played a primary role in the development and implementation of the Applications Group's Mechanical Licensing System, a system rolled-out at EMI on or about August 13, 2003 to a uniformly positive reception.

33.     After the roll-out of the Mechanical Licensing System, plaintiff was among those members of the Applications Group singled out as one of the primary contributors

to the successful roll-out of the system.

34.     Throughout her employment at EMI, plaintiff worked closely with and/or was directly supervised by Hecker.

35.     From virtually the inception of her employment at EMI, plaintiff was subjected to inappropriate gender-based remarks and scrutiny by Hecker.

36.     Hecker frequently began professional conversations and meetings with plaintiff by slowly scrutinizing her body and then commenting on plaintiff's physical appearance and what she was wearing.

37.     On information and belief, Hecker further objectified the women at EMI by commenting on their bodies to his male colleagues.

38.     Hecker did not subject male members of the Applications Group to similar scrutiny, comment and objectification.

39.     At least one female employee in the Applications Group had formerly advised EMI that Hecker needed extensive management training, including sensitivity training.

40.     Hecker also demonstrated contempt for plaintiff and other women members of the Applications Group by adorning his office with sexualized paraphernalia, including without limitation, at various times, a poster of a topless pre-pubescent girl, a poster depicting a topless woman straddling a giant red tongue and two buttons displayed in close proximity reading "Horny" and "Dick", respectively.

41.     Despite the display of such sexualized materials being described as problematic at a sexual harassment training session conducted at EMI,  Hecker continued to display such paraphernalia notwithstanding that plaintiff had advised him that she found his

display of such paraphernalia demeaning and offensive.

42.     In addition to his overtly sexist behavior towards plaintiff, Hecker also refused to seriously consider plaintiff's career development and professional growth within the Applications Group.

43.     On the one-year anniversary of her employment with EMI, Hecker unfairly passed plaintiff over for a promotion to Senior Business Analyst.

44.     In or about June 2004, Hecker oversaw EMI's efforts to fill the newly created position of Royalties Manager within the Applications Group.

45.     When plaintiff met with Hecker to discuss the Royalties Manager position, Hecker responded to plaintiff's expression of interest by commenting on how she looked in her suit.

46.     Thereafter, Hecker refused to seriously consider plaintiff's application to fill the Royalties Manager position, including refusing to put plaintiff forward for the formal interview process for the position of the Royalties Manager.

47.     Hecker refused to seriously consider plaintiff for the position of Royalties Manager despite the fact that plaintiff's skill set and experience matched up with the qualifications for the position, and despite plaintiff's strong record of performance over six years within the Applications Group.

48.     Hecker ultimately filled the Royalties Manager position with a male candidate from outside of the Applications Group who lacked plaintiff's experience, knowledge and relationships within the Applications Group and the Royalties Business Unit.

49.     When plaintiff expressed to Hecker her concerns about not being seriously

considered for the Royalties Manager position, Hecker was rude and dismissive of plaintiff.

50.    Thereafter, Hecker continued to treat plaintiff in a hostile and demeaning manner, refusing to provide her guidance or direction regarding job responsibilities and performance objectives and trivializing plaintiff's contributions to the work of the Applications Group.

51.    On or about June 6, 2005, plaintiff was abruptly terminated by EMI purportedly for falsely claiming to be sick.

52.    Plaintiff had missed three days of work in the prior week due to a gastro-intestinal illness and low-grade fever she developed while in Mexico.

53.    While ill, plaintiff twice called in to advise EMI that she would be unable to come to work due to illness.

54.    In a meeting with Hecker and a representative of EMI's Human Resources Department on the morning of June 6, plaintiff was told she needed to verify her illness with a doctor's note before she could return to work.

55.    Although plaintiff was aware of no EMI policy requiring documentation of her illness, plaintiff consented to this request because she had a pre-existing appointment to see her doctor regarding her gastro-intestinal difficulties scheduled for that afternoon.

56.    Before plaintiff was able to see her doctor that afternoon, plaintiff was called on her cell phone and abruptly terminated by EMI.

57.    Plaintiff was given no reason for EMI's wilful failure to permit plaintiff the opportunity to document her illness.

58.    Later that day, plaintiff met with her doctor, who diagnosed her with a

gastro-intestinal infection and prescribed her antibiotic medication to treat the condition.

59.     As of the date of her termination, plaintiff had received no prior disciplinary warnings regarding excessive or unauthorized absences.

60.     Throughout her employment at EMI, plaintiff consistently had been rated meets or exceeds expectations in her annual performance reviews.

61.     Subsequent to her termination, plaintiff received several email messages from managers at EMI expressing surprise and remorse about her termination.

62.     One manager plaintiff worked closely with stated in an email, "I can't believe it!! You were such a HUGE resource to our company.  Dumb move on their part."

63.     Another manager stated, in pertinent part, "We found out that you are no longer with EMI yesterday and we are all so upset.   ... It is our loss and "they" will find out soon enough."

64.     Another colleague at EMI stated, in pertinent part, "We were shocked and sorry to hear about your exit from EMI.  We thought of you as an informed voice of reason down there.  You seemed to see the bigger picture when others did not."

65.     EMI's asserted reason for termination was pretextual and designed to mask EMI's discriminatory motive.

## COUNT I

66.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 65 as if they were fully restated herein.

67.     EMI has discriminated against plaintiff in the terms and conditions of her employment on the basis of her sex in violation of Title VII.

10

68.     As a result of EMI's discrimination against her, plaintiff has suffered damage, including without limitation, deprivation of income and benefits, the unlawful termination of her employment, as well as emotional pain, suffering, inconvenience, mental anguish, humiliation and damage to her reputation and career.

## COUNT II

69.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 68 above.

70.     As a result of the aforementioned actions, EMI has discriminated against plaintiff on account of her sex with respect to the terms, conditions and privileges of her employment in violation of New York Executive Law § 290 et seq.

71.     As a result of the aforementioned actions, Hecker has violated the New York Executive Law §290 et seq. by aiding, abetting, inciting and coercing the unlawful discrimination outlined herein.

72.     As a result of defendants' discrimination against her, plaintiff has suffered damages, including, without limitation, deprivation of income and benefits, emotional pain, suffering, inconvenience, damage to reputation and career, mental anguish and humiliation.

## COUNT III

73.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 72 above.

74.     As a result of the aforementioned actions, EMI has discriminated against plaintiff on account of her sex with respect to the terms, conditions and privileges of her employment in violation of the New York City Administrative Code § 8-101, et seq.

75.     As a result of the aforementioned actions, Hecker has violated the New York City Administrative Code § 8-107(6) by aiding, abetting, inciting and coercing the unlawful discrimination outlined herein.

76.     As a result of defendants' discrimination against her, plaintiff has suffered damage, including, without limitation, deprivation of income and benefits, emotional pain, suffering, inconvenience, damage to reputation and career, mental anguish and humiliation.

WHEREFORE, plaintiff Christine Vincent respectfully requests that this Court grant judgment for plaintiff and award plaintiff the following relief against defendants:

(1)     A declaratory judgment that the acts, policies, practices, and procedures complained of herein violated plaintiff's rights as secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., the New York Executive Law, § 290 et seq., and the New York City Administrative Code, § 8-101, et seq.;

(2)     Issue an injunction ordering plaintiff reinstated to the highest position to which she was and would be entitled with salary, benefits, job responsibilities and other terms of employment commensurate with such position;

(3)     Order defendants to make plaintiff whole by providing:  (a) back pay with interest based on plaintiff's appropriate compensation had she not been discriminated against; (b) front-pay; and (c) reimbursement for lost retirement benefits, pension, social security, experience, training opportunities, and other benefits; in an amount to be shown at trial but believed to be not less than $500,000;

(4)     Grant plaintiff compensatory damages for her emotional pain and suffering, inconvenience, mental anguish and humiliation, and damage to reputation and career

12

in an amount not less than $500,000;

           (5)     Grant plaintiff punitive damages in an amount not less than

$1,000,000.00;

           (6)     Grant plaintiff her attorneys' fees, costs and disbursements; and

           (7)     Grant plaintiff such other and further relief to the plaintiff as this Court

may deem just and proper.

Dated: New York, New York
       June 5, 2006

                                   BANTLE & LEVY LLP

                                   By:_____
                                     Robert L. Levy
                                 817 Broadway
                                 New York, New York 10003
                                 (212) 228-9666
                                 Attorneys for Plaintiff